IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CV-45-FL

| | | |
|---|---|---|
| CALVIN TYRONE NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN NICHOLAS HIGH, in his | ) | |
| personal capacity and his official capacity | ) | |
| as a Deputy Sheriff of Columbus County, | ) | |
| North Carolina; LEWIS L. HATCHER, in | ) | |
| his personal capacity and his official | ) | |
| capacity as Sheriff of Columbus County, | ) | |
| North Carolina; WESTERN SURETY | ) | ORDER |
| CO. d/b/a/ CNA SURETY INSURANCE | ) | |
| as the SURETY for the Columbus County | ) | |
| Sheriff; TRACEY WARD also name | ) | |
| "John Doe" in his personal capacity and | ) | |
| his official capacity as Lieutenant of | ) | |
| Columbus County Detention Center of the | ) | |
| Sheriff; and RENE TREVINO, in his | ) | |
| personal capacity and his official capacity | ) | |
| as Deputy Sheriff of Columbus County, | ) | |
| North Carolina, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the parties' cross motions for summary judgment, (DE 34, DE 56), as well as defendants' motion for sanctions, (DE 39), and plaintiff's motion to show cause, (DE 41). The matters have been fully briefed, and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants defendants' motions and denies plaintiff's motions.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, initiated this action by filing complaint on March 21, 2018, against individual defendants Brian Nicholas High ("High"), Lewis L. Hatcher ("Hatcher"), Tracey Ward ("Ward"), and Rene Trevino ("Trevino"), all law enforcement officers, as well as North Carolina Western Surety ("surety"). Plaintiff alleges violations of his Fourth Amendment rights and negligent infliction of emotional distress. He brings vicarious claims and claims for supervisor liability, based on three events transpiring on two different days: 1) defendant High's traffic stop of plaintiff conducted on March 8, 2018; 2) defendant Trevino's alleged assault of plaintiff on March 16, 2018, following plaintiff being held in civil contempt in child support proceedings at Columbus County courthouse ("courthouse"); and 3) defendant Ward's alleged responsibility for plaintiff being retained at the Columbus County detention center ("detention center"), also on March 16, 2018, following plaintiff's purge of the civil contempt charge.

The parties have engaged in an ongoing and contentious discovery dispute regarding the March 16, 2018 security camera footage from both the courthouse and detention center, which is the subject of the plaintiff's instant motion to show cause filed October18, 2018, (DE 41), as well as plaintiff's previously filed September 10, 2018 motion to compel, which was denied October 25, 2018. Defendants maintain plaintiff has received the requested unedited footage in its entirety, stating the security camera footage disclosed

> accounts for every single moment of the Plaintiff's whereabouts and actions (and the actions of Columbus County Sheriff's Deputies and Detention Officers with whom he interacted) from 10:00 a.m. until 3:04 p.m. on March 16, 2018, encompassing the period of time at issue in the Plaintiff's Complaint.

(DE 55 at 3-4).[1] Defendants have also submitted this footage to the court, (see courthouse footage (DE 28-13), detention center footage (DE 28-14), detention center footage (DE 28-15)), as well as cell phone footage created by plaintiff on March 8, 2018, (see cell phone footage (DE 28-13)).[2]

On October 4, 2018, plaintiff filed instant motion for summary judgment. (DE 34). In support, plaintiff relies on previously-discussed footage as well as affidavits by plaintiff, Connie Robinson ("Robinson"), and Gerald Hemingway ("Hemingway"); plaintiff's medical records; and receipts signed by Magistrate Judge Gregory Greene ("Magistrate Judge Greene") evincing plaintiff's civil contempt purge.[3]

On October 16, 2018, defendants filed the instant motion for sanctions, seeking sanctions for plaintiff's failure to appear at his duly-noticed deposition scheduled for Monday, October 1, 2018 in Whiteville, North Carolina. (DE 39). On November 16, 2018, defendants filed instant motion for summary judgment, (DE 56), also relying on previously-discussed footage as well as

---

[1] Defendants argue that plaintiff's motion to compel, and this case in general, is "yet another example of Plaintiff's abuse of the court system to harass and attempt to intimidate pubic officials." (DE 28 at 1). Defendants cite litigation brought by plaintiff against various public officials, including five lawsuits filed in the Superior Court of Columbus County in 2011 and 2012, resulting in a gatekeeping order entered in that court against plaintiff, and seven lawsuits in addition to the current lawsuit filed since November 2014 in this district, (id. at 2-6), including three before this court, see Norton v. Rosier, 7:14-CV-260-FL, Norton v. Tabron, 7:16-CV-56-FL, and Norton v. City of Whiteville, 7:16-CV-300-FL; see also Norton v. Tabron, 7:16-CV-21-BO, Norton v. City of Whiteville, 7:16-CV-133-BO, Norton v. Columbus County Department of Social Services, 7:17-CV-171-BR, and Norton v. Columbus County Board of Elections, 7:19-CV-8-D. Since defendants' filing, plaintiff has filed one additional case in this district. See Norton v. Columbus County Board of Elections, 7:19-CV-88-D. None of the other federal cases filed by plaintiff are related to the current case except to the extent those cases involve plaintiff bringing claims against various public officials, as plaintiff does here.

[2] The parties have submitted multiple copies of the relevant footage throughout this case. For ease of reference, the court will cite to the above-referenced footage throughout this order. Additionally, the court will provide specific references as needed regarding detention center footage, where the filing of this footage contains separate files representing views from separate cameras, labeled by time and place.

[3] On September 27, 2018, plaintiff filed motion to show cause entitled "Motion To Show Cause Magistrate Gregory Greene For Failure To Abeyance Subpoena . . .," in which plaintiff argued Magistrate Judge Green failed to turn over to plaintiff "any and all receipts of Calvin Norton's civil contempt purge on March 16, 2018 . . . ," (DE 30 at 2), the receipts plaintiff now submits in support of summary judgment motion. The court denied this motion on October 25, 2018.

affidavits of all individual defendants, Magistrate Judge Greene, detention officers Mitra Jenkins and Bernetta Crawford, attorney Michael Stephens, and Clementine Thompson ("Thompson"); court orders regarding plaintiff's civil contempt; and plaintiff's medical records.

## STATEMENT OF THE FACTS

Except as otherwise noted, the undisputed facts may be summarized as follows.

A.     March 8, 2018 Traffic Stop Conducted by Defendant High

On March 8, 2018, while driving in his marked Columbus County sheriff's patrol car near Whiteville, North Carolina, defendant High observed a vehicle, towing a trailer, pull out from a stop sign onto North Carolina Highway 701 without properly yielding to oncoming traffic, nearly causing a traffic accident.  (High Affidavit (DE 52-2) ¶ 4).  Defendant High initiated a traffic stop of the vehicle, which was operated by plaintiff.

Defendant High advised plaintiff that he stopped plaintiff because he pulled out in front of oncoming traffic and almost caused a collision.  After confirming the validity of the vehicle registration as well as plaintiff's driver's license, defendant High returned to the vehicle and observed plaintiff recording the interaction on plaintiff's cell phone.  (See cell phone footage (DE 28-13)).  Defendant High issued a warning to plaintiff.  As confirmed by plaintiff's cell phone footage, defendant High remained professional throughout the incident, and plaintiff proceeded without citation.  (See id.; see also High Affidavit (DE 52-2)).[4]

---

[4]  Plaintiff does not deny the March 8, 2018 traffic stop occurred as described above; plaintiff "merely denies that he was speeding or that he actually caused an accident."  (DE 65 at 11; see also cell phone footage (DE 28-13) at 57-1:07 (plaintiff stating "no cars are in a wreck nowhere"); DE 36 at 2 ("There was no accident caused by this Plaintiff to justify the Defendant High's traffic stop.")).

The traffic stop lasted approximately six minutes.[5]

## B. March 16, 2018 Incident with Defendant Trevino

On the morning of March 16, 2018, Judge William A. Fairley held plaintiff in civil contempt for plaintiff's failure to pay child support as ordered by the court, also ordering that plaintiff be taken into custody and detained in the detention center until such time as he paid the sum of $4,150.00 to purge his civil contempt. (DE 36-8, DE 28-4, Travino affidavit (DE 52-3) ¶¶ 5-6)). Plaintiff was taken into custody by the bailiffs, including defendant Travino.

Plaintiff was secured in a holding cell at the courthouse prior to being moved to the detention center. Prior to transporting plaintiff, security camera footage shows defendant Travino opened a locker in a adjoining room to the holding cells and retrieved a set of restraints. Defendant Travino then entered the area of the holding cells and opened the door to plaintiff's holding cell, entering the cell at approximately 10:41:15 a.m.[6] Less than a minute later, defendant Travino exits the cell at approximately 10:42:04 a.m., and plaintiff follows out of the cell at approximately 10:42:19 a.m., with his left hand in restraints, connected by a long chain to restraints on his ankle. (See courthouse footage (DE 28-13) at camera C-27 at 10:41:15-10:42:19). At 10:42:24 a.m., defendant Travino opened Hemingway's cell, located across from plaintiff's cell, and the three men rode an elevator to where the transport van was located.

---

[5] Plaintiff submits affidavit evidence of Elischa Deslauriers ("Deslauriers") regarding this traffic stop, alleging that plaintiff "had no need to make any turns to get to Whiteville that would have cause any allegations of pulling out into ongoing traffic." (DE 36-2). However, because Deslauriers admits she was not present at the traffic stop and has no personal knowledge of the incident in question, her affidavit is inadmissible. Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment. Maryland Highways Contractors v. State of Maryland, 933 F.2d 1246, 1251–52 (4th Cir.1991); see also Fed. R. Evid. 801. Additionally, even if admissible, this affidavit evidence states only that, in Deslauriers' understanding, plaintiff did not need to make a turn on the day in question and does not address defendant High's testimony that he witnessed plaintiff turning onto North Carolina Highway 701 without properly yielding to oncoming traffic, testimony plaintiff does not dispute.

[6] The cameras do not provide footage of what occurs inside the cell.

Plaintiff informed defendant Travino that he was physically unable to enter and ride in the transport van, which required plaintiff to walk up steps to enter the rear of the van, and asked for a personal transport by Sheriff Hatcher in his patrol car. (Travino affidavit (DE 52-3) ¶ 17; see also courthouse footage (DE 28-13) at camera C-8 at 10:46:14-10:48:12). Defendant Trevino told plaintiff this was not an option, instructed plaintiff to enter the van, and offered plaintiff his right arm for support, which plaintiff briefly accepted. (Travino affidavit (DE 52-3) ¶ 17; see also courthouse footage (DE 28-13) at camera C-8 at 10:46:14-10:48:12). Then plaintiff sat down on the floor of the transport van at the rear of the vehicle, and defendant Trevino removed the restraints from plaintiff's left wrist and ankles to allow plaintiff to maneuver. (Travino affidavit (DE 52-3) ¶ 17; see also courthouse footage (DE 28-13) at camera C-8 at 10:46:14-10:48:12). Plaintiff then scooted himself into the rear of the transport van unassisted. (Travino affidavit (DE 52-3) ¶ 17; see also courthouse footage (DE 28-13) at camera C-8 at 10:46:14-10:48:12). Defendant Trevino "advised [plaintiff] to sit on the bench in the rear prisoner section and fasten his seat belt, but [plaintiff] responded that he could not do so," to which defendant Trevino told plaintiff "to at least try." (See Trevino affidavit (DE 52-3) ¶ 18; see also courthouse footage (DE 28-13) at camera C-8 at 10:46:14-10:48:12).

Defendant Trevino drove the two prisoners to the detention center, located approximately a mile away. (Trevino affidavit (DE 52-3) ¶ 6). Upon arrival plaintiff exited the transport van of his own accord and walked inside the door to the detention center. (See detention center footage (DE 28-14) at reverse angle of CCDC Sally Port, at 10:53:00-10:53:20; see also id. at entry into CCDC booking area, at 10:53:00-10:53:39)).

Plaintiff alleges that while being transported on the floor of the transport van to the jail, plaintiff suffered an injury to his left ear.  (DE 65 at 16).

C.     March 16, 2018 Detention and Release

Robinson, plaintiff's sister, appeared at the detention center on March 16, 2018, at 1:15 p.m. and delivered $4,150.00 to purge plaintiff's civil contempt.  (See Robinson Affidavit (DE 27-2) at 2).  A receipt was issued by Magistrate Judge Greene, indicating that plaintiff had paid the requisite amount.  (See DE 36-8 at 1).  Thereafter, Magistrate Judge Greene informed a detention officer that plaintiff's civil contempt had been purged and that he could be released after he received his release paperwork.  (Greene Affidavit (DE 52-5) ¶ 6).

Plaintiff went to Magistrate Judge Greene's window, located in the detention center, and received the receipt.  (Id. ¶ 8).  Plaintiff strenuously objected to this receipt as indicating that he paid the requisite amount; therefore, as alleged by plaintiff, "in an attempt to satisfy the Plaintiff, a replacement receipt" was issued, indicating it was a family member, not plaintiff, that paid this amount.  (DE 65 at 5; Greene Affidavit (DE 52-5) ¶ 8; DE 36-8 at 2; DE 36-8 at 4).

Plaintiff's demand was unusual.  (Greene Affidavit (DE 52-5) ¶ 9 ("Mr. Norton's attitude and demands confused me. 1 did not understand why he did not want the receipt and other paperwork to indicate that he had paid the money necessary to purge his contempt . . . .  When I asked him why he was not satisfied with the receipt, Mr. Norton advised me that the $4,150.00 that was paid was not his money and he did not want anyone to think that it was.")).  While determining what to do about issuing a replacement receipt, Magistrate Judge Greene had plaintiff returned to the holding cell from 2:07 p.m. to 2:28 p.m., during which time Magistrate Judge Green spoke with

a clerk from the courthouse for guidance. (Id. ¶ 10; detention center footage (DE 28-15) at 2:07-2:28).

Defendant Ward arrived at the detention center at 2:26 p.m. (Ward Affidavit (DE 52-4) ¶ 6; detention center footage (DE 28-15) at 2:26:16); see also DE 65 at 10-11 ("when defendant Ward entered the Detention Center, Norton was still in a cell and not out of the booking area until at 14:27:57")).

After plaintiff was released from the holding cell at approximately 2:28 p.m., defendant Ward attempted to take plaintiff's picture for the detention center's database, which plaintiff attempted to prevent. (Ward Affidavit (DE 52-4) ¶¶ 7-8; id. ¶ 4 ("It is the policy of the Sheriff of Columbus County that all inmates detained in the Columbus County Detention Center, regardless of the reason for and length of their detention, be photographed for record keeping purposes.")). After a picture was secured, plaintiff returned to Magistrate Judge Greene's window, was given the replacement receipt, and was against dissatisfied; however, at this point, Magistrate Judge Greene told plaintiff the conversation was over and plaintiff was free to leave. (Greene Affidavit (DE 52-5) ¶ 12).

Around 2:56 p.m. plaintiff exited the detention center and left the premises. (DE 36 at 2; Robinson Affidavit (DE 27-2) at 2).

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily

be based on speculation and conjecture." <u>Myrick v. Prime Ins. Syndicate, Inc.</u>, 395 F.3d 485, 489

(4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one

reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.

<u>Id.</u> at 489-90.


B.     Analysis

    1.     Parties' Motions for Summary Judgment (DE 35, DE 56)

        a.     March 8, 2018 Traffic Stop by Defendant High

Because a routine traffic stop is more like an investigative detention than a custodial arrest,

the court evaluates a traffic stop under the test set forth in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>United</u>

<u>States v. Green</u>, 740 F.3d 275, 279 (4th Cir. 2014). Under this inquiry, the officer's decision to stop

the vehicle must be both "justified at its inception" and adequately "limited both in scope and

duration." <u>United States v. Digiovanni</u>, 650 F.3d 498, 506-07 (4th Cir. 2011).

Having personally witnessed the plaintiff commit a violation of the traffic code by failing

to yield to oncoming traffic, thereby almost causing an accident, defendant High was authorized

under the Constitution to initiate a traffic stop of the plaintiff. <u>See</u> <u>Atwater v. City of Lago Vista</u>,

532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has

committed even a very minor criminal offense in his presence, he may, without violating the Fourth

Amendment, arrest the offender.").[7]

---

[7] Plaintiff implies that defendant High may have been improperly motivated to harass plaintiff in conducting
this traffic stop. However, it is well established that subjective motive is irrelevant as long as an officer has probable
cause to believe that an offense has been committed. <u>See</u> <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996) ("Subjective
intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

10

Plaintiff argues that "[i]n this case without general information why the stop occurred, without any citations, without an accident or accident report, without any indication to 911 central on a transcript that plaintiff almost caused a wreck by pulling out in front of ongoing traffic, plaintiff denying that he committed any traffic violation, then there's no evidence before this court of any justifiable reason to stop Mr. Norton on March 8, 2018."  (DE 65 at 14-15).

Plaintiff offers no authority, nor is the court aware of any, rendering a traffic stop invalid where an officer does not issue a citation, write an accident report, or specify a reason for initiating a traffic stop when reporting his location.[8]  Additionally, plaintiff's unsupported allegation that he did not commit a traffic violation is a conclusion of law, not an assertion of fact, and plaintiff does not allege in any filing before the court that defendant High's version of events is incorrect, that plaintiff did not properly yield to oncoming traffic and almost caused on accident.  (See DE 65 at 11 (plaintiff "merely denies that he was speeding or that he actually caused an accident"); cell phone footage (DE 28-13) at 57-1:07 (plaintiff stating "no cars are in a wreck nowhere"); DE 36 at 2 ("There was no accident caused by this Plaintiff to justify the Defendant High's traffic stop."); see also DE 34 at 3 ("Defendant did not indicate or mention to 911 central, that plaintiff almost caused an accident and that no evidence supports that defendant High ticketed plaintiff for a traffic violation.  Likewise, there's no witness of the driver of an adjacent vehicle to testify that an accident almost occurred, in fact defendant High admitted in discovery that he had no witness.")).

---

[8]  Plaintiff's citations to North Carolina General Statutes §§ 20-166.1 and 132-1.4 are inapposite where those statutes concern "reports and investigations required in the event of an accident" and "records of criminal investigations."

Finally, it is undisputed that the stop was "limited both in scope and duration," Digiovanni, 650 F.3d at 506-07, as also confirmed by plaintiff's cell phone footage, (cell phone footage (DE 28-13)).

Therefore, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted as to the March 8, 2018 traffic stop by defendant High.

   b. March 16, 2018 Incident with Defendant Trevino

In plaintiff's verified complaint, plaintiff alleges that when defendant Trevino came to plaintiff's holding cell on March 16, 2018, he commented "I'm not here to 'baby sit' and snatched Plaintiff's right arm regardless [of plaintiff's physical impairments] into a double chain connecting both legs and forced him to a transport van." (Compl. (DE 1) ¶ 26 (emphasis added)). Defendant Trevino, however, alleges that he did not "jerk his right arm in any manner, nor did [he] pull it back behind" plaintiff; he "never attempted to secure his right arm"; and "[i]nstead, [he] placed a handcuff only on Mr. Norton's left wrist." (Trevino Affidavit (DE 52-3) ¶ 25).[9]

Security camera footage shows plaintiff's right arm was not secured, only his left arm, while he was moved to the transport van. (See courthouse footage (DE 28-13) at camera C-27 at 10:41:15-10:42:19). Where allegations and claims made by plaintiff contradict the events as shown by video evidence of the incident, a court must "'view[ ] the facts in the light depicted by the videotape,'" "[r]ather than relying on 'visible fiction' propounded by the party whose account is contradicted by

---

[9] Plaintiff makes repeated reference to another officer earlier in the day allegedly placing handcuffs on plaintiff and then removing the handcuffs upon discovery of plaintiff's physical impairments. (See, e.g., DE 34 at 5). However, this alleged incident does not appear to have bearing on the incident at issue involving defendant Trevino.

the video evidence." Sawyer v. Asbury, 537 F. App'x 283, 291 (4th Cir. 2013) (citing Scott v. Harris, 550 U.S. 372, 381 (2007)); see also Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("In particular, where, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

Plaintiff now alleges in declaration that while being held in the holding cell, awaiting transport, "defendant Rene Trevino [came] back to Norton's holding cell alone and he assaulted this plaintiff by twisting his right arm causing a re-injury, knowingly after being told and warned by this plaintiff that he was disabled suffering from physical impairments of his right arm and knee," (DE 65 at 15), stating "Defendants' argue[ment] that Mr. Norton's right arm was not secured when he walked out of the cell is irrelevant and not persuasive when the assault occurred inside the cell and Norton's rejection and Trevino noticed that he re-injured Mr. Norton's arm, he then only cuffed left arm," (id. at 16).

Plaintiff has failed to create a triable issue of material fact regarding defendant Trevino's actions for multiple reasons. First, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). Plaintiff originally alleged defendant Trevino snatched his right arm into chains, forcing plaintiff to the transport van. Plaintiff now alleges without explanation and presumably after review of the security camera footage, that plaintiff's original version of events did not occur. Now, plaintiff alleges during the less than a minute in which defendant Trevino was

in plaintiff's holding cell, to which the cameras do not have access, defendant Trevino snatched plaintiff's right arm but then never secured that arm into chains. This conclusory and contradictory statement is insufficient to create a triable issue of material fact. See also Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir.1996) ("[S]ummary judgment affidavits cannot be conclusory.").

Alternatively, the court finds plaintiff's allegations related to this incident are so belied by the record that no rational jury could believe his version of these events. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See Scott, 550 U.S. at 380. The security camera footage demonstrates no behavior on the part of plaintiff that would suggest that he sustained any injury to his right arm and instead depicts plaintiff walking out of his cell, left arm handcuffed, with no facial expressions of even discomfort or any other indication of right-arm injury, following this alleged incident. (See courthouse footage (DE 28-13) at 10:41:15-10:48:12).[10] Accordingly, the court finds plaintiff cannot establish that a rational jury would find the incident occurred in the manner plaintiff describes.[11]

Plaintiff has also submitted affidavit evidence from Hemingway who states "Deputy Trevino used excessive force," and that the following events occurred: 1) defendant Trevino opened

---

[10] Throughout transport, plaintiff walks with a limp, but there is no indication of right-arm injury.

[11] Even if the court credited plaintiff's version of events, plaintiff has failed to establish defendant Trevino violated plaintiff's constitutional rights, where as here plaintiff has stated only that defendant Trevino briefly snatched plaintiff's right arm, almost immediately let it go, and secured plaintiff's left arm, and has put forth no evidence of injury or that the alleged force used against him was "purposefully and knowingly used" and was "objectively unreasonable." Duff v. Potter, 665 F. App'x 242, 244 (4th Cir. 2016); see also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015).

Hemingway's cell block and let him out, 2) defendant Trevino then opened plaintiff's cell, and 3) "Deputy Trevino used excessive force and snatched Norton's right arm to connect him in hand cuffs and then chain both on his legs as like I was saying he was not here to baby sit." (Hemingway affidavit (DE 31-1) at 2).

However, review of the security camera footage shows 1) defendant Trevino procuring restraints, 2) defendant Trevino opening and entering plaintiff's holding cell, 3) plaintiff and defendant Trevino exiting plaintiff's holding cell less than one minute later, and then 4) defendant Trevino opening Hemingway's holding cell and letting him out. (See courthouse footage (DE 28-13) at camera C-27 at 10:41:15-10:43:00).

Hemingway's version of events contradicts the security camera footage and seems to imply, as plaintiff originally alleged, that plaintiff's right and not left hand was handcuffed. The court does not credit Hemingway's version of events. See Sawyer, 537 F. App'x at 29; Scott, 550 U.S. at 372; Iko, 535 F.3d at 525. Hemingway was in his holding cell during the alleged event, and Hemingway's conclusory allegations stating otherwise are insufficient to create a triable issue of material fact. See Evans, 80 F.3d at 962.[12]

Plaintiff's claims regarding his transport to the detention center likewise fail. Without further explanation, plaintiff alleges that while being transported on the floor of the transport van to the jail, plaintiff suffered an injury to his left ear. (DE 65 at 16; DE 36 at 2 ("I respectfully

---

[12] Plaintiff additionally submits, in support of his revised version of events, medical records dated over two weeks after this incident wherein plaintiff reported his right arm had been pulled back behind his back but also where the medical evidence shows, "no evidence of fracture, dislocation or subluxation," taking into account x-rays taken of plaintiff's right shoulder. (DE 28-12). Although plaintiff argues otherwise, this evidence is proof that plaintiff complained of an injury to his right arm that occurred at some point, inflicted by an unknown person, but not that an injury actually occurred.

advised defendants of my physical impairments, but they drove off the transport van leaving me on the floor that caused my head to bump the steel beams and puncher my left ear")).

Plaintiff does not explain how his ear could have been injured, particularly where plaintiff was sitting in the transport van and his hands were free. Plaintiff does not dispute that he was able to get into the transport van and was unrestrained during the transport. Neither plaintiff nor Hemingway allege the transport van was driven in an inappropriate way in the mile-long journey. As stated, security camera footage shows that upon arrival at the detention center, plaintiff exited the transport van of his own accord and walked inside. (See detention center footage (DE 28-14) at reverse angle of CCDC Sally Port, at 10:53:00-10:53:20; see also id. at entry into CCDC booking area, at 10:53:00-10:53:39)). The court finds no triable issue of material fact as to this alleged incident.[13]

Therefore, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied as to the March 16, 2018 incident regarding defendant Trevino.

c.      March 16, 2018 Detention and Release

Plaintiff alleges generally that on March 16, 2018, he was unlawfully delayed from being released from the detention center after his sister had paid the requisite amount to purge his civil contempt. (See DE 65 at 8 ("There should have been no confusion with the magistrate's paperwork, and it certainly should not have taken over an hour to correct the receipt unless the intent was to harm plaintiff.")). Although plaintiff speaks of defendants generally and the lack of authority of the

---

[13] Plaintiff submits as evidence in support of this claim an unauthenticated picture, allegedly of his left ear. (See DE 36-4). Even if plaintiff's picture was admissible, see Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."), it is unclear what the picture actually depicts. Additionally, plaintiff offers no information as to the circumstances under which the picture was taken, including when the picture was taken.

magistrate judge and clerk of court to detain him while resolving the receipt issue, (see id. at 4-9), the only defendant named in this action personally involved in plaintiff's March 16, 2018 detention and release from the detention center is defendant Ward, who attempted to take pictures of plaintiff for the detention center database prior to plaintiff's release.

Regarding defendant Ward, plaintiff states as follows:

> There was no need for Defendant Tracy Ward to hold Mr. Norton for picture, when such was not apart of his incarceration and if so, the picture should have been taken upon his arrival at 10:53 a.m. The Order of Civil Contempt did not stipulate that the jail was to hold Plaintiff until a photo was taken or under the jail figures out what's wrong with the picture device as alleged by defendant Tracy Ward.

(DE 65 at 9-10).[14]

Defendant Ward's act of taking plaintiff's photograph took less than three minutes and occurred while plaintiff was still in custody, as Magistrate Judge Greene had yet to release plaintiff. (See Greene Affidavit (DE 52-5) ¶ 12; Ward Affidavit (DE 52-4) ¶ 10; see also detention center footage (DE 28-15) at 14:28:28-14:30:45). It is undisputed that after Magistrate Judge Greene advised plaintiff that he was free to go, defendant Ward did nothing to delay plaintiff's exit. (Greene Affidavit (DE 52-5) ¶ 12; Ward Affidavit (DE 52-4) ¶ 11).

The undisputed evidence shows defendant Ward did not violate plaintiff's constitutional rights. Therefore, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied as to the March 16, 2018 detention and release.

d.      Claims for Negligent Infliction of Emotional Distress

---

[14] Defendant Ward states that when he was returning from lunch on the day in question, he received a call that the camera system used to take booking photos of inmates was not working correctly and that he was needed to address the problem, which he attempted to do, prior to taking a picture of plaintiff. (Ward Affidavit (DE 52-4) ¶¶ 4, 6).

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that 1) the defendant negligently engaged in conduct, 2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and 3) the conduct did in fact cause the plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Plaintiff has put forth no evidence that it was reasonably foreseeable that defendants' allegedly negligent conduct would cause plaintiff severe emotional distress.[15] Additionally, plaintiff has produced no evidence of severe emotional distress suffered by plaintiff, as defined under North Carolina law. See Waddle v. Sparks, 331 N.C. 73, 83 (1992) (citation omitted) ("the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.")).

Accordingly, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied as to plaintiff's claim for negligent infliction of emotional distress.

e.     Claims Against Defendant Hatcher

Plaintiff does not allege that defendant Hatcher was personally involved in any alleged violation of plaintiff's rights, and all claims against defendant Hatcher are based on concepts of vicarious liability or supervisor liability. However, because there is no triable issue of material fact that any other defendant violated plaintiff's rights, plaintiff's claims against defendant Hatcher likewise fail. See, e.g., Iqbal, 556 U.S. at 676 (providing a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution); Rizzo v. Goode,

_____

[15] Although not wholly clear, presumably the allegedly negligent conduct at issue is defendant High's traffic stop, defendant Trevino's alleged assault, and defendant Ward's alleged detention of plaintiff.

423 U.S. 362, 371-72 (1976) (a § 1983 plaintiff must show he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (citations omitted) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under this section.'"); Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 420 (4th Cir. 1996) ("We see no need to address the merits of these claims because all are derivative of Appellants' claim that Officer Lake used excessive force against Wilson, which was rejected by a jury. In the absence of any underlying use of excessive force against Wilson, liability cannot be placed on either the non-shooting officers, a supervisor, or the City.").[16]

In sum, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted.[17]

2.      Plaintiff's Motion to Show Cause (DE 41)

Plaintiff seeks a court order directing nonparty Thompson, "for a second time," to produce all security camera footage relating to events that occurred on March 16, 2018, in response to subpoena. (DE 41 at 1).[18]  Plaintiff argues that "[t]hese videos requested are admissible relevant

---

[16] To the extent that plaintiff asserts a claim against defendant Hatcher's official bond, such a claim fails. North Carolina General Statute § 58-76-5 provides a plaintiff with a statutory cause of action on a sheriff's official bond in addition to any state common law cause of action a plaintiff may have. However, in order to prevail on a statutory claim against a sheriff's official bond, plaintiff must be able to prove every element of an underlying common law tort claim. Plaintiff has failed to do so here. See, e.g., Elliott v. Rollins, No. 5:11–CV–693–FL, 2013 WL 5460193, at *2 (E.D.N.C. Sept. 30, 2013) (holding where the "plaintiff does not survive summary judgment on a common law tort claim, it follows that plaintiff's statutory bond claim must also fail"); Stafford v. Barker, 129 N.C. App. 576, 585 (1998) (affirming grant of summary judgment where there was no common law claim to support plaintiff's statutory bond claim).

[17] Given the court's holding above, it is unnecessary to address defendants' various immunity arguments.

[18] Thompson is "a duly appointed and sworn Columbus County Deputy Sheriff, holding the rank of Captain" and "the Jail Administrator for the Columbus County Detention Center." (Thompson Affidavit (DE 55-1) ¶ 2).

evidence that would certify the time of purge made by Plaintiff's sister to support false imprisonment claims asserted in the complaint and the inventory sheet will prove that Plaintiff did not have $4,150.00 with him in his possession upon arriving to the jail on 03/16/2018." (Id. at 2).

Defendants respond again that all footage has been produced and that, "[f]or reasons that remain unclear, Plaintiff has persisted in seeking security camera footage from areas of the Columbus County Detention Center on March 16, 2018 that he never went to and which otherwise does not depict him." (DE 55 at 4; id. at 5 (stating this footage "had long since been recorded over in good faith and in the normal course of operations of the Detention Center")). Plaintiff responds at length, (DE 61), but not in substance, failing to address defendants' argument that plaintiff has received all relevant footage.

The facts plaintiff seeks to prove via the allegedly missing security camera footage are not in dispute, and plaintiff fails to inform the court what relevant footage is missing that depicts him on the day in question. Plaintiff has not presented evidence that Thompson knowingly failed to comply plaintiff's subpoenas or that plaintiff has been harmed or prejudiced in any way. Plaintiff's motion is denied.[19]

   3.     Defendants' Motion for Sanctions (DE 39)

Rule 30(g) of the Federal Rules of Civil Procedure provides as follows:

(g) Failure to Attend a Deposition or Serve a Subpoena; Expenses. A party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to:
(1) attend and proceed with the deposition; or
(2) serve a subpoena on a nonparty deponent, who consequently did not attend.

---

[19]   The court disregards plaintiff's repeated and unsubstantiated allegations that defendants tampered with evidence and altered the security camera footage submitted to plaintiff and the court. (See, e.g., DE 34 at 9; DE 36 at 5).

Fed. R. Civ. P. 30(g).

In support of defendants' motion for sanctions, defendants allege that defendants' counsel served first notice of deposition on the plaintiff on July 13, 2018, scheduling plaintiff's deposition for August 1, 2018. (DE 40-2). Plaintiff communicated to counsel that he was unavailable on that day, eventually informing counsel plaintiff could attend a deposition on either August 2 or August 3, 2018.

On July 30, 2018, defendants' counsel agreed to a August 3, 2018 deposition and served amended notice of deposition on plaintiff. (DE 40-3). That evening plaintiff informed defendants' counsel that he would not appear for the deposition, stating as follows:

> Brad I hope you've reviewed my second request for video footage of the county detention center magistrate and front entrance area and when such footages has been tendered, we can proceed otherwise do not [waste] your time as for Friday Aug 2, 2018 date has become a necessary postponement as a result of the defendants willful behaviors to hide evidence.

(DE 40-12 at 3). Thereafter, in response to defendants' counsel seeking alternative days to August 2, 2018, plaintiff informed counsel again, "[w]hen I received your mail and review the footages of my request I will assure you adequate dates for scheduling depositions that I can be available." (DE 40-14 at 2).

Defendants' counsel agreed to postpone deposition again, and requested plaintiff provide dates of availability, but informed plaintiff that if no dates were forthcoming, defendants' counsel would choose a date unilaterally. Following additional and increasingly contentious communication between the parties, on August 29, 2018, defendants' counsel provided plaintiff eight specific dates in September and October to choose from for scheduling of plaintiff's deposition. (DE 40-19 at 1).

On the morning of September 10, 2018, plaintiff informed counsel in part as follows: "As far as deposition I've continuously advised you that the delays of discovery requests are the mere reasons why I have not committed to any deposition." (DE 40-20 at 2). That afternoon at 4:05 p.m., defendants' counsel served second amended notice of deposition on plaintiff with deposition scheduled to occur on October 1, 2018. (DE 40-4; DE 40-21 at 1).

Twelve minutes later, plaintiff informed counsel he was unable to be deposed on October 1, 2018 due to state court proceedings he was scheduled to attend. (DE 40-22 at 2). Plaintiff has submitted to this court the calendar requested he filed in state court at noon on September 10, 2018, requesting hearing on October 1, 2018 regarding a child support matter. (DE 45-2 at 2). Plaintiff provided to defendants' counsel no alternative dates for scheduling his deposition.

On September 11, 2018, defendants' counsel informed plaintiff that "[u]nless and until you provide me with alternative dates that are acceptable to me on which to conduct your deposition, I will continue forward with holding your deposition on October 1, 2018 as scheduled." (DE 40-23 at 2; see id. ("You have the power to change the October 1, 2018 date for you deposition by providing with some alternatives without any further delay. Should you fail to provide me with alternative dates, then any failure by you to attend your October 1, 2018 deposition date will be no one's fault but yours.")). Defendants allege, and plaintiff does not dispute, that "Plaintiff never provided any alternative dates for his deposition, nor did Plaintiff contact defendants' counsel to state that he would be anywhere else but at his deposition at 10:00 a.m. on October 1, 2018 in Whiteville, North Carolina as scheduled." (DE 40 at 7).

Defendants' counsel proceeded to attend the duly-noticed deposition, to which plaintiff did not. Legal assistant to defendants' counsel contacted plaintiff after defendants' counsel has been

waiting an hour. Plaintiff informed her he was aware that his deposition had been scheduled for October 1, 2018 at 10:00 a.m. at the Columbus County administrative building, but that he had not consented to the deposition and that he had informed defendants' counsel he had court proceedings at the Columbus County courthouse in Whiteville. Plaintiff further stated "he had already appeared at his court proceeding at the Columbus County Courthouse earlier that morning, that it had been continued to another day, and that he had left the courthouse." (DE 40-5 at 4). Nevertheless, plaintiff "emphatically stated that he would not appear for his deposition." (Id.).[20]

As defendants' counsel repeatedly informed plaintiff, plaintiff cannot refuse to attend a duly-noticed deposition because he believes, rightly or wrongly, defendants failed to adequately respond to his discovery requests. The court grants defendants' motion for sanctions in which defendants request the court, at a minimum, reimburse defendants for their attorney's fees, travel time, and court reporter service expenses incurred as a result of plaintiff's refusal to appear for his scheduled deposition on October 1, 2018.[21]

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion for summary judgment (DE 34) and GRANTS defendants' motion for summary judgement (DE 56). Plaintiff's motion to show cause (DE 41) is DENIED. Defendants' motion for sanctions (DE 39) is GRANTED. The court ORDERS plaintiff to pay attorney's fees, costs, and expenses incurred by defendants as a result of plaintiff's refusal to appear for his scheduled deposition on October 1, 2018. Defendants are DIRECTED to file within seven days from the date of this order a declaration of costs and reasonable attorney's fees incurred. Plaintiff shall have 14 days to respond. Thereupon the court

---

[20] Defendants' counsel informs the court that the Columbus County courthouse is located less than fifty yards from the Columbus County administration building. (See DE 40 at 8 n.2).

[21] Because the court grants defendants' motion for summary judgment, defendants' additional requests in their motion for sanctions, such as request compelling plaintiff to attend deposition, need not be addressed.

will enter such further order confirming the amount of costs and reasonable attorney's fees payable by plaintiff, as well as a date certain for payment of such costs and reasonable attorney's fees.

SO ORDERED, this the 9th day of May, 2019.

LOUISE W. FLANAGAN
United States District Judge